Yitzchak Zelman, Esq.
Arizona Bar Number: 5086509
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:         (732) 695-3282
Fax:              (732)298-6256
Email:          yzelman@marcuszelman.com
*Attorney for Plaintiff Patricia Hubbard*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Patricia Hubbard,**<br><br>                    **Plaintiff,**<br><br>        -against-<br><br>**Zions Debt Holdings, LLC,**<br><br>                    **Defendant.** | **Civil Case Number:**<br>**2:24-cv-00237-JJT** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

1

# **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in support of Plaintiff's Motion for Default Judgment, pursuant to FRCP 55.  This is a case filed under the Fair Debt Collection Practices Act (the FDCPA).  Plaintiff, Patricia Hubbard, is an 86-year old senior citizen who was pursued by a debt collector seeking to collect hundreds of dollars on a debt that she did not owe.  Even worse, the Defendant wildly inflated the amount of the debt supposedly owed by the elderly Ms. Hubbard, arbitrarily tacking on hundreds of dollars in interest and fees that the underlying contract never authorized.  This debt collector failed to ever provide Ms. Hubbard with the statutorily-required notice of her rights to dispute this made-up debt, and instead just parked this debt on her credit report, thereby making it more difficult for her to obtain credit in her old age.

After being properly served, the Defendant consciously chose to ignore this lawsuit – just like it consistently does, <u>every time</u> it faces an FDCPA lawsuit for its egregious disregard of these federal laws protecting everyday Americans.  As a result, the Clerk's Certificate of Default was then entered in this action on March 8, 2024.  *See,* Docket 10.  Plaintiff now asks that the Court enter an Order granting the Plaintiff an award of statutory damages and

Case 2:24-cv-00237-JJT   Document 12-1   Filed 04/09/24   Page 3 of 20

compensatory damages, along with her attorneys' fees and costs. The legal support for each of those claims are addressed, in turn, below.

## ARGUMENT

**A. Plaintiff's Claim Under The FDCPA.**

The allegations in the Complaint, deemed admitted by the Defendant's default, establish several violations of the FDCPA. "To prevail on a FDCPA claim, a plaintiff must sufficiently establish that (1) she was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Bazan v. Hammerman & Hultgren PC*, No. CV-20-01138-PHX-DLR, 2020 U.S. Dist. LEXIS 165957, at *2 (D. Ariz. Sep. 10, 2020), quoting *Hamilton v. Tiffany & Bosco PA*, No. CV-14-00708-PHX-GMS, 2015 U.S. Dist. LEXIS 193943, 2015 WL 11120694, at * 2 (D. Ariz. Feb. 10, 2015).

The Complaint this action alleges that Ms. Hubbard canceled her home alarm system, but that the alarm company continued billing her, even though she owes it no money. *See,* Docket 1, ¶13-14. Ms. Hubbard further alleges that this home alarm monitoring bill (a quintessential consumer debt) was then purchased by the Defendant, which is a debt collector that specializes in the

buying and collection of defaulted debts. *See id.,* ¶5-9, 16-17. The Plaintiff has thus established the first two elements of her FDCPA claim.

The third element of the Plaintiff's FDCPA claim is similarly now established, as the Defendant plainly violated a number of distinct provisions of that statute. For example, Section 1692f(1) of the FDCPA specifically prohibits debt collectors from attempting to collect any amount that is not owed. 15 U.S.C. § 1692f(1). Plaintiff alleges that the Defendant violated this provision by attempting to collect hundreds of dollars from her that she did not owe. *See,* Docket 1, ¶31-34. Similarly, Plaintiff alleges that the Defendant violated 15 USC § 1692e by: (1) making false representations regarding the amount of the debt owed (violating § 1692e(2) of the Act), and (2) by failing to disclose that it was a debt collector (violating § 1692e(11) of the Act). *See,* Docket 1, ¶24-25, 35. Finally, the Plaintiff has established a violation of 15 U.S.C. § 1692g because the Defendant failed to provide her with the statutorily-required notice about her rights to dispute this debt. *See id.*, ¶23, 37.

Having established each element of her claim under the FDCPA, Plaintiff is now entitled to a default judgment against the Defendant, along with the damages, fees and costs available under the statute.

### B. Plaintiff Is Entitled To An Award Of Statutory Damages.

A plaintiff who successfully brings a claim for unfair debt collection practices is entitled to a statutory damage award of up to $1,000 under the Act. 15 U.S.C. § 1692k(a)(2)(A). In this action, the Defendant plainly does not care about complying with the FDCPA, as evinced by its violation of - at least - four different, discrete provisions of the law: (1) failing to disclose that it is a debt collector, (2) seeking hundreds of dollars from the Plaintiff that she does not owe, (3) misrepresenting the amount of the Plaintiff's debt to the credit reporting agencies, and (4) not even bothering to tell the Plaintiff that she has the statutory right to dispute this made-up debt. Defendant further *knew* that the Plaintiff did not owe this money, but continued to pursue it anyway, making these actions intentional. *See,* Docket 1, ¶33-34.

Given the Defendant's widespread and flagrant disregard of the FDCPA, along with the intentional nature of its actions, it is respectfully submitted that this is a case where the maximum amount of statutory damages is warranted. *See, Waldrop v. LTS Collections Inc.,* No. CV-20-00246-PHX-MTM, 2020 U.S. Dist. LEXIS 208548, at *18 (D. Ariz. Nov. 4, 2020)("The conduct described—which Defendants failed to answer despite having been personally served—is egregious, and warrants the maximum statutory penalty

proscribed by the FDCPA"), citing *Myers v. LHR, Inc.,* 543 F. Supp. 2d 1215, 1216-18 (S.D. Cal. 2008) (full statutory damage award for threatening legal action to collect debt after the statute of limitations expired); *Esget v. TCM Fin. Servs. LLC*, 2014 U.S. Dist. LEXIS 8583, 2014 WL 258837 at *7 (E.D. Cal. Jan. 23, 2014) (full statutory damage award for threatening debtor with lawsuits and wage garnishments that collector "never intended to take"); *Miranda v. Law Ofc. of D. Scott Carruthers*, 2011 U.S. Dist. LEXIS 55180, 2011 WL 2037556 at *5 (E.D. Cal. May 23, 2011) (full statutory damage award for mailing plaintiff a letter with the heading "NOTICE OF PENDING COURT PROCEEDINGS" when no lawsuit had been filed).

It is therefore respectfully requested that the Plaintiff should be be awarded $1,000 for her statutory damages.

**C. Plaintiff Is Entitled To An Award Of Actual Damages.**

In addition to statutory damages, Ms. Hubbard seeks an award of actual damages to compensate her for the emotional distress she suffered as a result of the Defendant's attempts to dun her for this debt that was not hers and that she could not afford. As outlined in her accompanying Declaration, Ms. Hubbard is 86 years old and living on a very tight and fixed budget. When she received the collection letter from the Defendant, this elderly woman

6

became frantic, worried and anxious about what would happen if she didn't accept the Defendant's offer to 'settle' this made-up debt for $500. Ms. Hubbard was concerned that any money the Defendant was going to take from her was going to bite into the funds she needed for her daily living expenses. Because the Defendant then put this on Ms. Hubbard's credit report, this also hurt her credit. This kept her up at night and caused her to lose sleep, and she got so nervous that she reached out to a lawyer for help.

Courts in this Circuit and nationwide regularly award FDCPA plaintiffs damages for the emotional distress they suffered as a result of the debt collector's actions. "[I]t is commonly accepted that damages stemming from emotional distress are compensable under the FDCPA." *Perkons v. Am. Acceptance, LLC*, No. CV-10-8021-PCT-PGR, 2010 U.S. Dist. LEXIS 125711, at *7 (D. Ariz. Nov. 28, 2010), citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) ("The only actual damages that a plaintiff would be likely to incur [under the FDCPA] would be for emotional distress caused by abusive debt collection practices"); FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50109 (Dec. 13, 1988) (noting that actual damages under the FDCPA include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress").

When a plaintiff's emotional distress - such as anxiety and lost sleep - is supported by only the plaintiff's affidavit without any other corroborating evidence, the courts have typically awarded approximately $5,000 in compensation. *See e.g.,, Kajbos v. Maximum Recover Solutions, Inc.*, 2010 U.S. Dist. LEXIS 142690, 2010 WL 2035788, at *3 (D. Ariz. May 20, 2010) (Relying on the plaintiffs' essentially identical and fairly conclusory declarations, the court awarded $5,000 in actual damages per plaintiff under the FDCPA as a result of the plaintiffs' emotional distress and mental anguish in the form of fear of answering the telephone, sleeplessness, feelings of hopelessness, pessimism, and nervousness which impacted their jobs, their personal relationships, and created marital instability); *Perkons v. Am. Acceptance, LLC*, No. CV-10-8021-PCT-PGR, 2010 U.S. Dist. LEXIS 125711, at *12 (D. Ariz. Nov. 28, 2010)($5,000 awarded for emotional distress to FDCPA plaintiff, based solely on her description of her symptoms in her declaration); *Cantu v. A R Client Servs. LLC*, 2020 U.S. Dist. LEXIS 149805, at *8 (C.D. Cal. Aug. 18, 2020)($5,000 awarded to FDCPA plaintiff based on her declaration that she suffered "a great deal of mental anguish in the form of stress, anxiety, nervousness, restlessness, and sleeplessness"); *Waldrop v. LTS Collections Inc.*, 2020 U.S. Dist. LEXIS 208548, at *16-17

(awarding $2,000 for emotional distress where the FDCPA plaintiff alleged that she suffered headaches, loss of sleep, and loss of appetite).

It is therefore respectfully requested that the Plaintiff be awarded $5,000 in actual damages to compensate her for the emotional distress she was needlessly forced to suffer in her old age.

**D. Plaintiff Is Entitled To An Award Of Attorneys' Fees And Costs.**

As the Plaintiff has prevailed in this action, she is entitled to an award of attorneys' fees and costs.  A consumer who brings a successful FDCPA lawsuit can recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).  "The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir.2008). Generally, litigants in the United States pay their own attorneys' fees, regardless of the outcome of the proceedings.  However, "in order to encourage private enforcement of the law ... Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side... The FDCPA is one such statute..." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

Courts have long recognized the importance of the fee shifting provision of the FDCPA, as well as the public policies behind it. The 9th Circuit affirmed that a separate award for costs and fees is mandatory if a plaintiff prevails on her claim under the Act. "Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995). *See also, Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) ("Congress encouraged private enforcement by permitting aggrieved individuals to bring suit as private attorneys general."); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012) ("The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA").

Once a party has established that he is entitled to attorneys' fees, '[i]t remains for the [] court to determine what fee is 'reasonable.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Increases or decreases are warranted in rare or exceptional cases. *See, Blum v. Stenson*, 465 U.S. 886, 898-901

(1984); *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994); *Clark v. City of Los Angeles*, 803 F.2d 987, 990-91 (9th Cir. 1986).

Under Ninth Circuit precedent, district courts are to employ the "lodestar" method in determining reasonable attorney's fees in FDCPA cases. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir.2001). The lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The lodestar figure should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation. *Id.* A strong presumption exists that the lodestar figure represents a reasonable fee. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

In this action, the Plaintiff's counsel has submitted a printout of the records maintained by its billing software, which is maintained contemporaneously with billed activities. *See,* Exhibit A. As these detailed records reflect, Plaintiff's counsel spent a total of 14.7 hours to litigate this case through the instant default judgment motion. There was no double-

11

billing or overstaffing in this case. Instead, this case was staffed by a single attorney, Yitzchak Zelman, Esq., a partner at Marcus & Zelman, LLC, who has been practicing for 12 years since first being admitted in 2012. The qualifications and expertise of Mr. Zelman are fully set forth in his Declaration attached hereto.

Mr. Zelman requests an hourly rate of $450 per hour for his work in this case. As discussed in his accompanying Declaration, Mr. Zelman does have a number of regularly paying hourly clients, who consistently pay his hourly rate of $450 per hour for his services. Furthermore, these exact requested hourly rates have been repeatedly awarded to Mr. Zelman over the past two years. *See, United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate").

Thus, Mr. Zelman was awarded $450.00 per hour two years ago, in *Barenbaum v. Hayt, Hayt & Landau, LLC*, 2021 WL 120925, at *6 (E.D. Pa. Jan. 13, 2021). In *Coulter v. Receivable Management Systems,* 2:17-cv-03970-JS [Docket 52] (E.D.Pa. June 4, 2020), the Honorable Chief Judge Juan

Sanchez approved Mr. Zelman's requested hourly rate of $450 per hour in an FDCPA class action. Similarly, in *Richardson v. Verde Energy,* 5:15-cv-06325-WB [Docket 140] (E.D.Pa. May 19, 2020), the Honorable Judge Wendy Beetlestone also approved this same requested hourly rate for Mr. Zelman in a TCPA class action. That hourly rate was most recently awarded to Mr. Zelman in *Espinosa v. Andrew C. Metcalf et al* [Docket 123] (D. Mass. October 5, 2023) ("the Court concludes that $450/hour is a reasonable hourly rate for both Attorneys Zelman and Crick") and in *Kapllani v. Metcalf et al*, 1:23-cv-10107-AK [Docket 42](D. Mass. July 19, 2023).

      Caselaw reflects that Mr. Zelman's requested hourly rate of $450 per hour is also squarely in line with the hourly rates awarded in this District to consumer attorneys with similar levels of experience. For example, in *Gross v. CitiMortgage Inc.*, No. CV-18-02103-PHX-ROS, 2023 U.S. Dist. LEXIS 139966, at *5 (D. Ariz. Aug. 10, 2023) the Honorable Judge Silver awarded an hourly rate of $650.00 to a consumer attorney with 13 years of experience (i.e., one more year of experience than Plaintiff's counsel in this case). And in *Martinez v. Alltran Fin. LP*, No. CV-18-04815-PHX-DLR, 2021 U.S. Dist. LEXIS 50489, at *4-5 (D. Ariz. Mar. 17, 2021), the Honorable Judge Rayes awarded an hourly rate of $500.00 to a consumer attorney with 11

13

years of experience (i.e., one year less than Plaintiff's counsel in this case). *See also, Gonzales v. Thunderbird Collection Specialists, Inc.*, No. CV-19-08302-PHX-SPL, 2020 U.S. Dist. LEXIS 265070, at *3 (D. Ariz. Oct. 16, 2020)(noting that the "Valeo Attorney Hourly Rates Database" indicates indicates that the average partner rate in Phoenix is $606 an hour and the average rate for all positions generally at such firms is $438 an hour).

Mr. Zelman's Affidavit, attesting to his regular hourly rate, is attached hereto, and establishes that the sought hourly rate here is reasonable. "We recently pronounced that declarations of the prevailing market rate in the relevant community are sufficient to establish the appropriate billing rate for lodestar purposes." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996). Further proof of the reasonableness of Mr. Zelman's requested hourly rate can be seen from these other cases in Arizona, which considered attorneys with similar years of experience.

Multiplying Mr. Zelman's requested hourly rate of $450.00 per hour by the 14.7 hours expended in this matter results in a fee award of $6,615.00. Plaintiff is also entitled to recovery of her out-of-pocket costs. Here, Plaintiff's expenses consists of the $405.00 filing fee, and the $90 spent on service of process. *See,* Exhibit A. This results in a total fee award of $7,110.

14

### E. A Default Judgment Is Appropriate And Warranted In Light Of The Seven *Eitel* Factors.

The Ninth Circuit has outlined the various factors that need to be considered, in determining whether a default judgment is appropriately granted. *See, Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Specifically, the Court must consider seven factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* Each of these elements warrant the granting of a default judgment in this action.

The first element is plainly present here, where the Plaintiff would obviously be prejudiced if default judgment was not granted, since she would be left without recourse against a debt collector who obviously has no interest in otherwise answering for its flagrant violations of her rights. *See, Kajbos v. Maximum Recover Sols., Inc.,* No. CV 09-1206-PHX-MHM, 2010 U.S. Dist. LEXIS 142690, at *6 (D. Ariz. May 17, 2010)(finding this first *Eitel* element satisfied in an FDCPA case, noting that "Plaintiffs would clearly suffer prejudice if default judgment was not granted because they would be without

15

other recourse for recovery"); *Waldrop v. LTS Collections Inc.*, No. CV-20-00246-PHX-MTM, 2020 U.S. Dist. LEXIS 208548, at *8 (D. Ariz. Nov. 4, 2020)("The first *Eitel* factor weighs in favor of default judgment. Plaintiff will be prejudiced by failure to enter default judgment, as continuation of this action despite Defendants' failure to respond precludes Plaintiff's ability to either obtain relief or litigate this case on the merits").

The second and third *Eitel* elements are similarly met here, where the Plaintiff has adequately established that the Defendant engaged in several unfair collection practices prohibited by the FDCPA. *Kajbos,* 2010 U.S. Dist. LEXIS 142690, at *6 (agreeing that these two elements were met because "Second, it appears that Plaintiffs have adequately pled the count of violation of the FDCPA in their Complaint against Defendant. Third, as Defendant's failure to answer constitutes an admission to the averments contained in the complaint under FRCP 8(d), the Court must accept the allegations as true"); *Waldrop*, 2020 U.S. Dist. LEXIS 208548, at *8 (agreeing that both of these elements were met where the FDCPA plaintiff adequately alleged each element of her claim under the statute.

The fourth *Eitel* element is easily met here, considering the small sums at stake. *Waldrop*, 2020 U.S. Dist. LEXIS 208548, at *14 (agreeing that

16

where $5,035.00 were requested for attorney's fees and costs under the FDCPA, and another $2,500.00 was sought for actual damages, this element was met because "the amounts are not so unreasonable that they weigh against default judgment"); *Kajbos,* 2010 U.S. Dist. LEXIS 142690, at *6 (finding this factor to be satisfied in FDCPA case where the plaintiff was only seeking $1,000 in statutory damages and another $5,000 in actual damages).

There is no possibility of a dispute of material facts, so the fifth *Eitel* element is also satisfied. *Waldrop*, 2020 U.S. Dist. LEXIS 208548, at *14 ("The fifth *Eitel* factor weighs in favor of entering default judgment. The possibility of a dispute regarding material facts is relevant only so far as there are two parties present to dispute those facts. When one party fails to appear to defend an action, there is no dispute of material facts"); *Kajbos,* 2010 U.S. Dist. LEXIS 142690, at *6 ("Here, Plaintiffs filed a well-pleaded complaint alleging the facts necessary to establish its claims and Defendant failed to answer Plaintiffs' complaint. Thus, this factor also favors the entry of default against Defendant").

There is zero indication that the Defendant's default is the result of excusable neglect. Nor has the Defendant claimed that it was, so the sixth *Eitel* factor weighs in favor of granting this Motion for Default Judgment.

17

*Waldrop*, 2020 U.S. Dist. LEXIS 208548, at *14-15 ("This factor weighs heavily in favor of granting default judgment. The risk of excusable neglect is substantially lessened when a defendant fails to respond after being properly served"); *Kajbos,* 2010 U.S. Dist. LEXIS 142690, at *6 ("Defendant failed to answer Plaintiffs' Complaint and has not opposed the instant motion; indeed Defendant has not even entered an appearance in this case.  Accordingly, the sixth factor favors granting default judgment against Defendant).

It bears noting that Defendant's default in this action is not some random one-off occurrence.  Instead, this appears to be a *modus operandi* of the Defendant, as evinced by the numerous times they default in FDCPA cases filed in the federal courts; pursuing debtors without any regard for the FDCPA, and then ignoring the resultant lawsuit in the hopes that the consumer gives up and doesn't follow through with collecting any default judgment. *See e.g.,* Clerk's Certificate of Defaults entered against Defendant in *Snyder v. Portfolio Recovery Associates, LLC et al*, 2:23-cv-00535-EWH-RJK (E.D.Va. February 1, 2024); *Vazquez v. Zions Debt Holdings, LLC et al*, 1:23-cv-22689-KMM (S.D. Fl. September 1, 2023); *Archer v. Experian Information Solutions, Inc. et al*, 8:23-cv-02888-JSM-CPT (M.D. FL. January 18, 2024). Indeed, the undersigned has yet to find a case where this Defendant

*did* appear or defend itself in any of the 12 cases they have been named in on PACER.

Finally, the seventh *Eitel* factor weighs in favor of default judgment, where the Defendant has expressed zero interest in litigating this case on its merits. *See, Waldrop*, 2020 U.S. Dist. LEXIS 208548, at *15 ("The final *Eitel* factor supports entry of default judgment. Though the Federal Rules of Civil Procedure contain a strong preference for deciding cases on the merits, a judgment on the merits is impractical, if not impossible, where defendants fail to respond to a plaintiff's complaint. Accordingly, the preference for decisions on the merits does not preclude default judgment"); *Kajbos,* 2010 U.S. Dist. LEXIS 142690, at *6 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. This is exactly what occurred here, and thus the seventh Eitel factor does not preclude the Court from entering default judgment against Defendant").

## **CONCLUSION**

For the reasons set forth above, it is respectfully submitted that Plaintiff's Motion for Default Judgment should be granted in its entirety.

19

With the entry of the Certificate of Default, Plaintiff prevailed in this action by obtaining a finding that the Defendant's actions violated the Plaintiff's rights under the FDCPA.  Statutory damages of $1,000 and compensatory damages in the amount of $5,000 should be awarded to compensate the elderly Plaintiff for what she was subjected to as a result of the Defendant's disregard for the law.  Finally, the Plaintiff should be permitted to recoup the $7,110 in attorneys' fees and expenses reasonably incurred in this action, for a total award of $13,110.

Dated:	April 9, 2024

			Respectfully submitted,

			By:__/s/ Yitzchak Zelman_____
			Yitzchak Zelman, Esq.
			Marcus Zelman, LLC.
			*Attorney for the Plaintiff, Patricia Hubbard*